## No. 11,146.

### THE PEOPLE *v.* BRIGHT.

Decided June 22, 1925.

On prosecution of defendant in error for adultery, the case was dismissed at the close of the people's case.

### *Judgment Disapproved.*

1. CRIMINAL LAW—*Sufficiency of Evidence—Dismissal.* In a criminal prosecution for adultery, if there was sufficient evidence to justify the jury in finding that the parties lived together in an open state of adultery, the court erred in dismissing the case, since it was for the jury to determine the weight of the evidence.

2. *Adultery.* Occasional acts of clandestine illicit intercourse are not alone sufficient to constitute living together.

3. *Adultery.* To constitute the crime of adultery, the living together need not be for any particular length of time. A single day has been held sufficient.

4. *Adultery—Evidence—Dismissal.* In a criminal prosecution for adultery, evidence reviewed and the action of the trial court in dismissing the case is disapproved.

*Error to the District Court of Yuma County, Hon. H. E. Munson, Judge.*

Mr. ROY T. JOHNSON, Mr. SAMUEL CHUTKOW, for the people.

No appearance for defendant in error.

*En banc.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

THE information in this case charged that William Bright and Louise Berg, in Yuma county, from the first day of August, 1923, to the first day of September, 1923,

unlawfully and wantonly did live together in an open state of adultery, the parties being married, but not to each other.

The information was filed under section 6837, C. L. 1921, which provides, inter alia, that "any man and woman who shall live together in an open state of adultery or fornication, or adultery and fornication", shall upon conviction be punished as therein provided; and further provides; "This offense shall be sufficiently proved by circumstances which raise the presumption of cohabitation and unlawful intimacy."

The defendant Bright only was placed upon trial. At the conclusion of people's evidence defendant moved for a directed verdict. The court did not direct a verdict, but dismissed the case. The district attorney brings the case here, as he may do under section 7113, C. L. 1921. The evidence shows, in a general way, the following facts, concerning the conduct of the defendant and Louise Berg, during the month of August, ·1923: One evening they registered at a rooming house in Sterling, Logan county, as Mr. Quinton and daughter, and were assigned to a room containing two beds. The hotel bill was paid by defendant and while there she called him "papa" in the presence of· Mrs. Miller. The next morning, about 1:30 o'clock, three police officers entered the room, occupied by defendant and the woman, and found him dressed only in his underwear and she in her nightgown.. Their personal belongings were scattered promiscuously about the room. Appearances indicated that only one bed had been occupied. Two or three days later the parties were together at a circus in Sterling, and on the night following were on the streets of Sterling.

This evidence, while it relates to occurrences in Logan county, was introduced for the purpose of showing the adulterous inclination and disposition of the parties.

During the early part of August, defendant and Mrs. Berg drove into Yuma about two o'clock in the morning, registered at the ·Red Cross Rooming House, and were as-

signed two adjoining rooms having a door between. Shortly after entering the rooming house both were seen in one of the rooms. Defendant was sitting on the side of the bed, his shirt and collar off, apparently undressing, while Mrs. Berg was standing in front of the mirror, with her waist off, combing her hair. Defendant checked out the next morning, but Mrs. Berg remained for several days. The parties were frequently seen driving together in Yuma county and in the town of Yuma, also taking ice cream together in a drug store. The evidence tended to show great solicitude for Mrs. Berg on the part of defendant. At one time he directed the town marshal of Yuma to arrest one Elmwood, asserting that he had assaulted Mrs. Berg, but later directed that the man be released. At Wray, he said to an official that he had a letter from a lady friend of his, saying she had been insulted by a man in Yuma. The same day in Yuma, defendant called Officer Goddard to witness a conversation between defendant and one Randall in which defendant accused Randall of insulting Mrs. Berg and said to him, "Don't let it happen again. You get that?" Defendant was sheriff of Yuma county during this time. At one time he, in company with Mrs. Berg, rented a room in a private house in Wray; he took her grips to the house and on the following day called there to see her; in the afternoon he took her out and they returned together about 11 p. m.; the day following he went to see her again and they went to her room; later they went out and Mrs. Berg returned about 9 o'clock that night; on Saturday night they went to a dance together; Sunday night at 9 o'clock defendant was in Mrs. Berg's room; they went together that night to the kitchen where Mrs. Berg washed her hair, the defendant remaining there with her until her task was completed, when they returned to her room where they remained for sometime; then they went into town, returning about 10 p. m., and went to her room again; defendant remained with her in the room until about 11 or 12 o'clock, when he came down and went away; Monday afternoon defendant went again to the

house and was with Mrs. Berg in the dining room where she was washing; on this occasion Mrs. Gibson, the landlady, said to Bright, she didn't know what to think of his conduct. The defendant came again to the house on Wednesday evening and they went away together saying they were going to a dance; it was late when Mrs. Berg came back. Again on Thursday, defendant came to the house both in the afternoon and in the evening; that evening he took her away. When defendant came to this house to see Mrs. Berg, he did not knock or rap on the door for admittance, but simply walked in, and if she was not in the lower part of the house, he went to her room above stairs. For three days Mrs. Berg worked in a restaurant and during that time defendant ate several meals there, frequently talking with her and on one occasion defendant reprimanded Mrs. Lawrence, who conducted the restaurant, for the way she treated Mrs. Berg, saying that Mrs. Lawrence did not treat her right and didn't pay her sufficient wages.

These parties were together at Remington's summer resort, one evening dancing and another evening skating. Remington said to defendant that "It was a devil of a thing for him to try to do something like that" to which defendant made no answer. One Saturday night defendant called Mrs. Remington out to his car, introduced her to Mrs. Berg and asked her to take Mrs. Berg into the dance hall, saying he could not take her in because his family was there. On another occasion when they were skating defendant objected because three other men were there skating and playing with Mrs. Berg, and told her to call them down or he would.

The trial court, in dismissing the case, said to the jury: "I think that such circumstances have been proved as would warrant the jury in determining or finding that, if it were submitted to you, the defendant was guilty of adultery, but I am satisfied that there is no competent evidence here that would justify any jury in finding that they lived together, cohabiting as husband and wife. The

living together which the court understands the statute to mean, cohabiting together, is under the same roof or under such conditions as husband and wife usually live, not secretly visiting together, not visits together for the purpose of intercourse, but living after the fashion of man and wife, and inasmuch as the court finds that there is no competent evidence to establish the fact of living together as man and wife, the court finds that it is necessary to take the case from the jury."

If the evidence was sufficient to justify the jury in finding that defendant and Louise Berg lived together in an open state of adultery, then the court erred in dismissing the case, since it is for the jury to determine the weight of the evidence. 2. C. J. p. 29, Sec. 67.

The evidence clearly established the adulterous relation between the defendant and Mrs. Berg, and the only question involved here is, was there sufficient evidence to go to the jury that defendant and Mrs. Berg lived together in an open state of adultery, within the meaning of the statute.

Occasional acts of clandestine illicit intercourse are not alone sufficient to constitute living together. Statutes such as ours are designed to prohibit and punish the disgraceful and scandalous conduct of those who would, by their evil and immoral example, debase and demoralize society. Our statute does not define the term "living together", and there are numerous cases holding to the construction placed upon it by the trial court, i. e. that the living together means, living under the same roof or under such conditions as husband and wife usually live—living together as man and wife. Other courts have apparently held a contrary view: State v. Lovan (Mo. App.) 250 S. W. 918; State v. Berry, 24 Mo. App. 466; Swancoat v. State, 4 Tex. App. 105; Wright v. State, 108 Ala. 60, 18 So. 941; Bodiford v. State, 86 Ala. 67, 5 So. 559, 11 Am. St. Rep. 20; Parks v. State, 4 Tex. App. 134.

In Swancoat v. State, supra, the court said: "Mr. Bishop says: 'They must live or lodge, at times at least, under

the same roof, or something must be done of the sort,' "
and cites 2 Bish. Crim. Law, Sec. 28.

In that case the court further said: "We do think that
whilst one such interview would not, that repeated adul-
terous meetings at any given place, or even different places
—as, for instance, at houses of assignation—would per-
haps be such a cohabiting as would constitute the offense
of adultery."

The court in *Parks v. State, supra,* approved the doc-
trine announced in the Swancoat Case and upheld the in-
struction of the trial court which said, inter alia: "The
law does not mean that the parties actually reside together
—that is, board, lodge, and have their washing together
in common—to make their acts of illicit intercourse with
each other that of adultery."

These Texas cases were based upon a statute which
read, "who shall live together in adultery." The Texas
statute has since been changed.

In *Wright v. State, supra,* the court used the following
language: "The rule is not correct, which asserts that
proof of occasional acts of illicit intercourse will not
authorize a conviction. Such instruction invades the
province of the jury. * * * There was evidence tend-
ing to show that both parties occupied a room containing
two beds. The parties were seen together in bed on two
occasions. They were seen at another time during the
occupancy of the room, to go off and lie down together
in a thicket. His own admission of having had inter-
course with the woman, and all of this evidence, occurred
within the period covered by the indictment. The evi-
dence shows only occasional acts of illicit intercourse, and
yet the facts, if believed by the jury beyond a reasonable
doubt, authorized the jury to find a living together within
the meaning of the statute."

In *Bodiford v. State, supra,* the court said: "When
acts and complicating circumstances are proved, it be-
comes largely a question for the jury to determine, whether

there was in fact such continuation as amounted to a living together."

In the case of *King v. People*, 7 Colo. 224, 3 Pac. 223, a witness testified: "King told me, after the indictment was found, that he did not see, as she was a public woman, why he should be prosecuted for sleeping with her any more than other men who went to the row and slept with other women."

The court made no reference to any other testimony although the record of that case shows that additional evidence was introduced on the trial. In that case this court held that the evidence referred to was sufficient to justify the court and jury in concluding that the overt act was committed. The record in that case discloses the trial court instructed the jury that it was not necessary, to constitute the offense charged, that the defendant should live permanently in the same house with the woman; that repeated meetings at any given place for the purpose of fornication so as to be open and notorious would constitute the offense. The court refused to give defendant's requested instruction which contained the following language: "The living together must be open and notorious as if the relations of husband and wife existed, and illicit intercourse must be habitual."

Inasmuch as exceptions were properly saved, error assigned on these instructions and argued in the briefs of counsel, we must assume, even though no reference is made thereto in the opinion, that this court found no error of the trial court in that regard.

It is reasonably clear that the living together need not be for any particular length of time. A single day has been held sufficient. *Hall v. State*, 53 Ala. 463. And this case is cited with approval in *State v. Cassida*, 67 Kan. 171, 72 Pac. 522.

We think the trial court erred in not submitting the case to the jury and therefore disapprove of its action.

Judgment disapproved.